IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **DARRYL FORD,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | Civil Action No.: 2:14-cv-01740-RDP |
| } | |
| **CAROLYN W. COLVIN,** } | |
| **Acting Commissioner of Social Security,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff, Darryl Ford, brings this action pursuant to Sections 205(g) and 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision of the Commissioner of Social Security ("Commissioner") denying his claims for a period of disability, disability insurance benefits ("DIB"), and Supplemental Security Income ("SSI"). *See also* 42 U.S.C. § 405(g) and 1383(c). Based on the court's review of the record and the briefs submitted by the parties, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

On November 3, 2011, Plaintiff protectively filed applications for disability,[1] DIB, and SSI benefits (Tr. 122–135), alleging that his disability began on January 1, 2010.[2] (Tr. 13). Both of Plaintiff's claims were initially denied by the Social Security Administration on

---

[1] Plaintiff previously filed for DIB in 2009 and was denied. (Tr. 149).

[2] Despite Plaintiff's amendment of the onset date to July 2, 2011, the ALJ mistakenly used the originally alleged onset date of January 1, 2010 in reaching a decision. The "harmless error" doctrine applies to review of the Commissioner's decisions. *See, e.g.*, *Diorio v. Heckler*, 721 F.2d 726, 728 (11th Cir. 1983); *Wright v. Barnhart*, 153 Fed. App'x 678, 684 (11th Cir. 2005) (per curiam). The plaintiff bears the burden of demonstrating that an error is harmful. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009). Plaintiff has not argued nor demonstrated that this oversight constitutes anything more than harmless error.

December 20, 2011. (Tr. 13). On January 4, 2012, Plaintiff filed a request for a hearing before an Administrative Law Judge ("ALJ"). (Tr. 13). This request was granted, and Plaintiff received a hearing before Administrative Law Judge Gloria W. Green on February 11, 2013.[3] (Tr. 60). The ALJ determined that Plaintiff was not under a disability, as defined within the Act, from January 1, 2010 through the date of the decision, March 11, 2013. (Tr. 10–21). Following the hearing, the Appeals Council denied Plaintiff's request for review (Tr. 1), making the ALJ's decision the final decision of the Commissioner, and therefore a proper subject of this court's appellate review.

## II.     Facts

Plaintiff was 51 years old at the time of the ALJ's decision. (Tr. 122). Although Plaintiff has at least a high school education, he indicates that he cannot read or write well, and was in special education classes as a student growing up. (Tr. 170). Plaintiff's school records indicate that Plaintiff was included in a special education program since the age of nine. (Tr. 143). Plaintiff has previous work experience including jobs as a laborer and machine operator. (Tr. 153-154). Plaintiff does not report any employment since 2009. (Tr. 175).

Plaintiff alleges disability due to swelling in his lower left leg and being a slow learner. (Tr. 153). Plaintiff reports that he is unable to work due to inadequate circulation in his leg, and that the ongoing pain and swelling in his legs is exacerbated by movement. (Tr. 64–66). Plaintiff's medical records show that he received a gunshot wound to the right leg and left hip in 1989. (Tr. 222). In his functional report to the Social Security Administration, Plaintiff states that his condition prevents him from standing or working for prolonged periods of time. (Tr. 168).

---

[3] Plaintiff was incarcerated beginning on January 5, 2012, and the hearing before the ALJ was conducted via telephone. (Tr. 61, 64).

2

Plaintiff's condition does not prevent him from performing household chores such as washing dishes, sweeping floors, or making up the bed. (Tr. 169). Plaintiff also reports frequent feelings of depression and hopelessness. (Tr. 173). Plaintiff testified that he had not taken any prescription medications for his condition. (Tr. 64).

Plaintiff's mental examination, based on a records review and clinical interview completed by Dr. Dan Lowery on December 16, 2011, demonstrated no significant mental impairment. (Tr. 461-464). Dr. Lowery reported that Plaintiff had an above average memory and an excellent daily recall. *Id.* Plaintiff's concentration and attention were intact. *Id.* While Plaintiff's judgment and insight skills were found to be below average, he had a logical thought process. *Id.* Dr. Lowery diagnosed Plaintiff with "pain disorder associated with a general medical condition" and "adjustment disorder with depressed mood." (Tr. 464). Dr. Lowery also noted that during his examination, Plaintiff had difficulty standing from a seated position, that he walked with a limp, and that his left foot was swollen. *Id.*

Prior to Plaintiff's incarceration on January 5, 2012, he had completed various medical examinations, including x-rays and CT scans to his chest and legs at the Birmingham VA Medical Center on July 13, 2011. (Tr. 197–201). The scans revealed no significant abnormalities for his chest scans, and noted that the cardiomediastinal silhouette was within normal limits. (Tr. 197). The scans of his legs revealed bullet fragments within the left iliac bone and left acetabular roof, but nevertheless revealed minimal edema and swelling. The report concluded that no gross abnormality was seen in the scans, and that there was no evidence of a cause for left lower extremity swelling. (Tr. 199). Additionally, the disability determination explanation completed by Dr. Robert Estock (who reviewed Plaintiff's medical records on December 20, 2011) indicates no severe impairment and no cause found for the left leg swelling. (Tr. 468). Dr. Estock

concluded that Plaintiff's medical disposition was "not severe" and that his impairments do not significantly limit his physical ability to do basic work activities. (Tr. 469).

**III.    The ALJ Decision**

Disability under the Act is determined under a five-step test. 20 C.F.R. § 404.1520. First, the ALJ must determine whether the claimant is engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). Work activity involving significant physical or mental activities is "substantial," while "gainful" work is done for pay or profit. *See* 20 C.F.R. § 404.1572(a)-(b). A claimant is presumed to have the ability to engage in substantial gainful activity when his earnings from employment rise above the amount allowed under 20 C.F.R. §§ 416.974, 416.975. A claimant cannot claim disability if found to engage in substantial gainful activity. 20 C.F.R. § 404.1520(b). Second, the ALJ must determine whether the claimant has a medically determinable impairment, or combination thereof, that significantly limits the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(a)(4)(ii). Absent such impairment, the claimant may not claim disability. *Id.* Third, the ALJ must determine whether the claimant's impairment meets or medically equals the criteria of an impairment listed in 20 C.F.R. Pt. 404, Subpt. P, App'x 1. *See* 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. If such criteria are met, the claimant is declared disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

In the fourth step of the analysis, if the claimant does not meet the listed criteria, the ALJ may still find disability, after completing a claimant's residual functional capacity ("RFC") assessment. 20 C.F.R. § 404.1520(e). Based on this RFC assessment, the ALJ determines whether the claimant can perform past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). Should the ALJ find that the claimant is capable of performing past relevant work, the claimant is deemed not disabled. *Id.* However, if the ALJ finds that the claimant cannot perform past relevant work,

then the ALJ must determine whether the claimant is able to perform any other work commensurate with his RFC, age, education, and work experience. 20 C.F.R. §§ 404.1520(a)(4)(v), 404.1520(g). At this stage of the analysis, the fifth and final step, the burden shifts to the ALJ to prove that, given a claimant's RFC, age, education, and work experience, a claimant is capable of making a successful adjustment to other jobs, which are available in substantial numbers within the national economy. 20 C.F.R. §§ 404.1520(g) and 404.1560(c). There are two means by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy. The first is by applying the Medical Vocational Guidelines. 20 C.F.R. Pt. 404, Subpt. P, App'x. 2. The Medical Vocational Guidelines ("grids") provide applicants with an alternate path to qualify for disability benefits when their impairments do not meet the requirements of the listed qualifying impairments.[4] The other means by which the ALJ may determine whether the claimant has the ability to adjust to other work in the national economy is by the use of a vocational expert. A vocational expert is an expert on the kinds of jobs an individual can perform based on his or her capacity and impairments.[5]

After considering the entire evidentiary record, the ALJ held that Plaintiff had not engaged in substantial gainful activity; that he had severe impairments of chronic venous insufficiency, obesity,[6] pain disorder associated with general medical condition, and adjustment

---

[4] The grids allow for consideration of factors such as age, confinement to sedentary or light work, inability to speak English, educational deficiencies, and lack of work experience. Each of these factors can severally limit the number of jobs realistically available to an individual. Combinations of the factors yield a statutorily-required finding of "disabled" or "not disabled."

[5] When an ALJ uses a vocational expert, she will pose hypothetical question(s) to the expert to establish whether someone with the limitations that the ALJ has previously determined that the claimant has will be able to secure employment in the national economy.

[6] In September 2010, Plaintiff weighed 258 pounds at a height of 74 inches. (Tr. 305). His Body Mass Index (BMI) was 33.3, which is categorized as obese. (Tr. 309). In November 2011, Plaintiff weighed 266 pounds with a BMI of 34.2. (Tr. 267).

disorder with depressed mood; and that he retained a residual functional capacity to perform light work with certain postural limitations.[7] (Tr. 15). The postural limitations were that Plaintiff could lift and carry 20 pounds on occasion and 10 pounds with frequency; could sit, stand or walk for six hours in an eight hour day; should never climb ladders, ropes or scaffolds, but could occasionally climb ramps and stairs and occasionally balance, stoop, crouch, kneel and crawl. (Tr. 17). The ALJ found that Plaintiffs impairments "could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible . . . ." (Tr. 18). In the ALJ's view, Plaintiff's lack of credibility was revealed by a lack of objective medical evidence supporting Plaintiff's allegations of hindering pain and a low level of treatment and medication for over a year prior to the ALJ hearing.[8] (Tr. 18).

The ALJ also considered Plaintiff's obesity and its possible effects on Plaintiff's ability to perform work, and found that "[Plaintiff's] obesity is not such as to prevent ambulation, reaching, orthopedic and postural maneuvers, or to prevent him from working or being able to complete a fairly full range of activities of daily living." (Tr. 19). While the ALJ did note that Plaintiff's obesity would hinder him exertionally and non-exertionally,[9] the condition only

---

[7] Light work involves lifting no more than twenty pounds at a time with frequent lifting or carrying of objects weighing up to ten pounds.

[8] Quite troublingly, the ALJ's opinion also concluded that Plaintiff was not credible in alleging a disability after the alleged onset date due to Plaintiff engaging in criminal activity between the onset date and the ALJ hearing. (Tr. 18) ("[H]e has obviously not [sic] so disabled, because he has engaged in a criminal act since that date that has warranted time in prison."). The court is not aware of any law indicating that involvement in criminal activity necessarily precludes a finding of disability in these cases. The ALJ's questionable logic in this respect does not change the outcome of this case; nevertheless, it should be made explicitly clear that a claimant's criminal acts do not, in and of themselves, constitute a bar to a finding of disability.

[9] *See* Social Security Ruling 96–4, 61 Fed.Reg. 34488 (July 2, 1996). Exertional limitations affect an individual's ability to meet the seven strength demands of the job: sitting, standing, walking, lifting, carrying, pushing, and pulling. *Id*. Nonexertional limitations or restrictions affect an individual's ability to meet the other

6

warranted a reduction in capacity at the light exertional range, with some other appropriate work restrictions, which are accounted for in the residual functional capacity finding. (Tr. 19).

Further, the ALJ found that Plaintiff is unable to perform any past relevant work, as the demands of such work exceed the residual functional capacity for light work. (Tr. 19). Under step five, the ALJ used both the grids and a vocational expert in assessing Plaintiff's case. The ALJ noted that:

> If [Plaintiff] can perform all or substantially all of the exertional demands at a given level of exertion, the medical-vocational rules direct a conclusion of either 'disabled' or 'not disabled' depending on [Plaintiff's] specific vocational profile (SSR 83-11) . . . . If [Plaintiff] had the residual functional capacity to perform the full range of light work, a finding of 'not disabled' would be directed. . . . However, [Plaintiff's] ability to perform all or substantially all of the requirements of this level of work has been impeded by additional limitations. To determine the extent to which these limitations erode the unskilled light occupational base, . . . the vocational expert [was asked] whether jobs exist in the national economy for an individual with [Plaintiff's] age, education, work experience and residual functional capacity.

(Tr. 20). Given the aforementioned factors, the vocational expert testified that Plaintiff would be able to work in jobs that exist in significant numbers in the economy such as assembly, poultry work or food preparation. (Tr. 20). The analysis under the grids and the evaluation of the vocational expert's testimony led the ALJ to conclude that Plaintiff is not disabled, because he is "capable of making a successful adjustment to other work that exists in significant numbers in the national economy." (Tr. 20-21).

**IV. Plaintiff's Argument for Reversal or Remand**

Plaintiff seeks to have the ALJ's decision reversed, or in the alternative, remanded for further consideration. He bases this request for relief on two arguments: First, Plaintiff contends that "[t]he ALJ's findings in combination with the effects of obesity better comport with a

---

demands of jobs and include mental limitations, pain limitations, and all physical limitations that are not included in the seven strength demands. *Id*.

sedentary RFC." (Pl. Mem. at 6). Second, Plaintiff argues that the ALJ's RFC findings are not based on substantial evidence due to a lack of development of the record. More specifically, Plaintiff alleges that the ALJ failed to obtain either a medical source statement or a consultative exam before making a decision. (Pl. Mem. at 7-8). Any other contentions that may have been made by Plaintiff are waived. *See Cunningham v. Dist. Att'y Office for Escambia Cnty*, 592 F.3d 1237, 1254 n.9 (11th Cir. 2010); *Copher v. Comm'r of Soc. Sec.*, 429 Fed. App'x 928, 930 n.1 (11th Cir. 2011).

## V.     Standard of Review

The only determinations to be made by this court are whether the record reveals substantial evidence to sustain the ALJ's decision, and whether the correct legal standards were applied. *See* 42 U.S.C. § 405(g); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988), *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982). The Commissioner's findings are conclusive if supported by "substantial evidence." 42 U.S.C. § 405(g); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990). The district court may not reconsider the facts, reevaluate the evidence nor substitute its judgment for that of the Commissioner. *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). Considering the final decision as whole, the court may only decide if the decision is reasonable and supported by substantial evidence. *See id.*

Substantial evidence is the relevant evidence "a reasonable person would accept as adequate to support a conclusion." *Martin*, 894 F.2d at 1529 (quoting *Bloodsworth*, 703 F.2d at 1239). When substantial evidence exists in support of the Commissioner's decision, the decision must be affirmed, even if the evidence preponderates to the contrary. *See id*. However, the court notes that judicial review, although limited, "does not yield automatic affirmance" of the ALJ's decision. *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988).

**VI.    Discussion**

In light of the legal standards that apply in this case, the court rejects Plaintiff's arguments for remand or reversal. For the reasons outlined below, the court finds that the ALJ relied on substantial evidence and the proper legal standards were applied.

    **A.    The ALJ's RFC Assessment Comports with a Light Work RFC and is Supported by Substantial Evidence.**

The ALJ's RFC assessment is "based upon consideration of all relevant evidence in the case record, including medical evidence and relevant nonmedical evidence, such as observations of lay witnesses of an individual's apparent symptomology, an individual's own statement of what he or she is able or unable to do, and many other factors . . . ." SSR 96-5p. Among those factors that may be considered is an individual's obesity.  As is the case here, obesity may be a severe impairment considered in the second part of the ALJ's analysis. (Tr. 15). The presence of obesity must also be accounted for by the ALJ in steps three and four of the analysis in determining an individual's RFC. SSR 02-1p. Plaintiff argues that the ALJ should not have made an RFC assessment for light work due to Plaintiff's obesity, and that Plaintiff's condition is more suitably matched with a sedentary RFC finding.  The court disagrees.

The ALJ explicitly took stock of Plaintiff's obesity in finding a light work RFC. The ALJ noted that "[w]hile obesity may or may not increase the severity or functional limitations of other impairments, each case will be evaluated solely on the information in the case record." (Tr. 19). The ALJ's opinion explained that while Plaintiff's obesity does present exertional and nonexertional limits, and thus requires a reduction in capacity, such a reduction is contemplated in certain postural limitations that may be assigned within the light work RFC category. (Tr. 19). Put simply, Plaintiff's obesity presents certain limitations on his ability to work, but those

limitations are not so severe as to prevent Plaintiff's ability to perform the work contemplated by a light work RFC.

A condition is relevant to the ALJ's RFC determination only to the extent it limits Plaintiff's ability to work. *See Moore v. Barnhart*, 405 F.3d 1208, 1213, n. 6 (11th Cir. 2005) ("[T]he mere existence of [an] impairment[] does not reveal the extent to which [it] limit[s the] ability to work or undermine the ALJ's determination in that regard"). As Defendant correctly notes, two of the three potential jobs recommended in the vocational expert's testimony—assembler and poultry eviscerator—do not require any movements that would breach the postural limitations mentioned by the ALJ, such as climbing, balancing, stooping, crouching, kneeling or crawling. The third job, food preparer, would only require occasional stooping and crouching. Thus, the jobs identified by the vocational expert as suitable for Plaintiff may be performed with the RFC assessment for light work applied here, taking into account certain postural limitations that contemplate Plaintiff's obesity. Based on the ALJ's consideration of the entire record, substantial evidence supports the ALJ's RFC assessment.

In any event, Plaintiff's argument could not proceed even if the ALJ's RFC determination did not take into consideration obesity because Plaintiff did not allege obesity as a cause of disability, or as a cause of any functional impairment at any point in his application or in the ALJ hearing. (Tr. 63, 153). "An ALJ's failure to address obesity in his decision is not reversible error when a plaintiff fails to allege obesity as a limitation and the medical reports do not indicate obesity would prevent a plaintiff from performing substantial gainful activity." *Spratley v. Colvin*, 2014 WL 5112084, at *3 (M.D. Ala. 2014) (*citing Fincher v. Astrue*, 2010 WL 739513, at *5 (S.D.Ga. 2010). While the medical reports in this case did make mention of Plaintiff's weight and body mass index (BMI), there was no mention made of obesity. The ALJ was not

under any obligation to find obesity as a disability or a contributor to disability when no such argument was provided.[10]

### B. The ALJ Was Not Required to Obtain a Medical Source Statement to Support a RFC Assessment.

The ALJ has a duty to develop the record fully and fairly. *Wilson v. Apfel*, 179 F.3d 1276, 1278 (11th Cir. 1999). The record "must be complete and detailed enough to allow [the ALJ] to make a determination or decision about whether [Plaintiff] is disabled...." 20 C.F.R. § 404.1513(e). Plaintiff argues that, without a medical source statement, the ALJ's RFC findings are not based on substantial evidence. However, an ALJ is not required to seek a doctor's assessment of a claimant's RFC. Such a requirement would essentially give the medical professional "the authority to make the determination or decision about whether an individual is under a disability, and thus would be an abdication of the Commissioner's statutory responsibility to determine whether an individual is disabled." SSR 96–5p, 1996 WL 374183 at *2.

Similarly, while Social Security regulations provide that the agency "will request a medical source statement" about what a claimant can do despite his impairments, "the lack of the medical source statement" will not make a physician's report incomplete. 20 C.F.R. § 404.1513(b)(6); *Greene v. Colvin*, 2015 WL 4067811, at *4 (N.D. Ala. 2015). In evaluating whether it is necessary to remand a disability determination for further consideration by the Commissioner, a reviewing court is "guided by 'whether the record reveals evidentiary gaps which result in unfairness or clear prejudice.'" *Couch v. Astrue*, 267 Fed. App'x 853, 855 (11th Cir. 2008) (quoting *Brown v. Shalala*, 44 F.3d 931, 935 (11th Cir.1995) (quotations and citations

---

[10] Thus, even if the ALJ's consideration of obesity as a limiting factor in the RFC assessment was insufficient, there was still no error because Plaintiff failed to allege obesity in the first instance.

omitted)). Here, the record reveals no such evidentiary gaps, notwithstanding the absence of a follow-up medical source statement. When there are no gaps in the evidentiary record, a court will not presume that the ALJ did not meet her statutory duty in further developing the record in order to reach a decision.

Plaintiff also claims that "the ALJ failed to develop the record to obtain a consultative examination pursuant to 20 C.F.R. 404.1419a." (Pl. Mem. at 8). However, in fulfilling the obligation to conduct a full and fair inquiry, the ALJ is not required to order a consultative examination unless the record establishes a necessity to render a decision. *See Ingram v. Commissioner of Soc. Sec. Admin.*, 496 F.3d 1253, 1269 (11th Cir. 2007) ("The administrative law judge has a duty to develop the record where appropriate but is not required to order a consultative examination as long as the record contains sufficient evidence for the administrative law judge to make an informed decision."). Here, there is no indication that the ALJ was making an uninformed decision by proceeding without a consultative examination, and it was not necessary to order one in this case. Accordingly, because the court finds that the ALJ properly analyzed the evidence of record as a whole, and his RFC assessment is supported by substantial evidence, the ALJ decision is due to be affirmed.

## VII. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and the proper legal standards were applied in reaching this determination. The Commissioner's final decision is therefore due to be affirmed. A separate order in accordance with this memorandum of decision will be entered.

**DONE** and **ORDERED** this November 23, 2015.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE